Revised 05/01 WDNY
# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK



FILED
U.S. DISTRICT COURT
W.D.N.Y. BUFFALO

2007 JAN 22 PM 1: 00

### ALEKSANDR GRIGORYEVICH IVANOV,

(Full name under which you were convicted)

Petitioner,

v.

Civil No. 07 , C V 0033 ℓc

### IMMIGRATION AND
### CUSTOMS ENFORCEMENT,

(Name of warden, superintendent, jailor or
authorized person having custody of petitioner

Respondent.

## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2241
## BY A PERSON IN CUSTODY

Petitioner's Name (and Prisoner Number, if applicable):   **Aleksandr Ivanov, A 71 383 827**

Petitioner's Place of Confinement:   **Buffalo Federal Detention Facility**
**4250 Federal Drive, Batavia, NY 14020**

1.  Provide the following information regarding the determination which your are challenging in this petition. (if you wish to challenge more than one determination, you should file a separate petition for each determination.)

    *Type of determination:   **Decision to Continue Detention**

    *Who made the determination:   **William M. Cleary, Field Office Director and acting ICE HQPDU Director**

    *Where was the determination made: **Detention and Removal Office, ICE, DHS, Buffalo, NY and HQPDU Washington, DC**

    *When was the determination made: **September 2006 and December 29, 2006**

    *Did you appeal the determination:   Yes _____ No __X__

    *If you **did** appeal:
        *To whom did you appeal: ————————————
        *When was the appeal decided: ————————————
        *What was the result of the appeal: ————————————

    *If you **did not** appeal, state why you did not: **There is no appeal from the District Director's, Director of the Detention and Removal Field Office's, the Executive Associate Commissioner's or HQPDU Director's decision.**

2. State **concisely** every ground on which you claim that you are being held unlawfully. Summarize **briefly** the **facts** supporting each ground:

(a) **Ground one:** There is no likelihood of Petitioner's removal from the U.S. in the reasonably foreseeable future. His continued detention by the Respondents violates the U.S. Constitution and contrary to the laws and treaties of the United States.

**Supporting facts** (state **briefly** without citing cases of law): Petitioner is a native of the former Soviet Union. He was a Lawful Permanent Resident in the U.S. when he was ordered removed to Russia as a result of his NYS criminal conviction. Petitioner has been detained in ICE custody for more than six (6) months after his order of removal became final. Petitioner has fully cooperated with ICE in their efforts to obtain travel documents for his removal. So far, Russian Consulate failed to confirm Petitioner's citizenship and has not/will not issue identity and travel documents. Petitioner has never become a citizen of Russia for the reason that he immigrated to the U.S. while he was a minor. Therefore, Petitioner is stateless. He is not a threat to community or a flight risk. Petitioner's removal to Russia or any other country is not likely to occur in the reasonable foreseeable future.

(b) **Ground two:** SEE Attached Memorandum of Law for further support.

**Supporting facts** (state **briefly** without citing cases of law):

3. Have you filed any other habeas corpus applications with respect to this incarceration?
   YES_____ NO __**X**____

If the answer is YES, please answer the following:
Approximate date of filing:————————————————————————
Court where petition filed: ————————————————————————
Docket number of proceeding: _____
Name of judge assigned to proceeding:_____
Disposition: _____

**WHEREFORE**, the petitioner prays that the Court grant petitioner the relief to which he or she may be entitled in this proceeding. (You may also list any specific relief you wish to obtain.)

(1) Petitioner seeks his immediate release, or in the alternative, an evidentiary hearing to explore the legality of his continued detention.

(2)

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: _JANUARY 3, 2007_
             (DATE)

_Alex _____
(SIGNATURE OF PETOITOINER)

_____
(SIGNATURE OF ATTORNEY (IF ANY)

2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
═══════════════════════════════════════ X

**ALEKSANDR GRIGORYEVICH IVANOV,**          :

          Petitioner,          :

       -against-          :

                                            Civil No.:_____

**IMMIGRATION AND**          :
**CUSTOMS ENFORCEMENT,**

          Respondent.          :
═══════════════════════════════════════ X

PETITIONER'S MEMORANDUM OF LAW IN
SUPPORT OF PETITION FOR A WRIT OF
HABEAS CORPUS, 28 U.S.C. SECTION 2241

Respectfully submitted:

*[signature]*

ALEKSANDR IVANOV, A71 383 827
Petitioner, *pro se*
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 14020

## PRELIMINARY STATEMENT

Aleksandr Ivanov ("Petitioner" or "Ivanov") submits this memorandum of law in support of a petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2241 declaring that his present detention by Respondents is illegal and in violation of his statutory rights and his due process rights under the Fifth (5th) Amendment to the Constitution of the United States. Petitioner seeks his immediate release, or in the alternative, an evidentiary hearing to explore the legality of his continued detention. Petitioner is not challenging his final order of removal. Petitioner is acting *pro se* at this time.

## CUSTODY

Petitioner is in the physical custody of respondents and U.S. Immigration and Custom Enforcement ("ICE"). Petitioner is detained at the Buffalo Federal Detention Facility in Batavia, New York. Petitioner is under the direct control of respondents and their agents.

## JURISDICTION

This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

This Court has jurisdiction under 28 U.S.C. § 2241; art. 1 §9, cl. 2 of the United States Constitution ("Suspension Clause"); and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C § 702, and the All Writs Act, 28 U.S.C. § 1651.

The REAL ID Act of 2005 does not preclude habeas review over challenges to detention that are independent of challenges to removal orders.

Petitioner has exhausted any and all administrative remedies to the extent required by law. There is no administrative appeal from the Director of the Detention and Removal Field Office's or the ICE Headquarters Post-Order Detention Unit ("HQPDU") decision denying a request from an alien under this section. 8 C.F.R. §241.4(d) and §241.13(g)(2).

## VENUE

Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)("the court issuing the writ must have jurisdiction over the custodian") venue lies in the United States District Court for the Western District of New York, the judicial district in which Petitioner is confined.

Petitioner Aleksandr Ivanov is a native of the former USSR and stateless. His order of removal became final on November 2, 2005. He was first taken into ICE custody on April 28, 2006, and has remained in ICE custody continuously since that date.

Respondent Alberto Gonzalez is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the INA. As such, Mr. Gonzalez has ultimate custodial authority over petitioner.

Respondent Michael Garcia is the Secretary of Department of Homeland Security ("DHS"). He is responsible for the administration of ICE and the implementation and enforcement of the INA. As such, Mr. Garcia is the legal custodian of Petitioner.

Respondent William M. Cleary is the Field Office Director of Detention & Removal Office, ICE, DHS in Buffalo, New York and is Petitioner's immediate custodian. See Vasquez v. Reno, 233 F.3d 688, 690 (1st Cir.2000), cert. denied, 122 S.Ct.43 (2001).

Respondent Charles Mule' is the Director of Buffalo Federal Detention Facility, where Petitioner is currently detained under the authority of ICE, alternatively may be considered to be Petitioner's immediate custodian.

## FACTS AND PROCEDURAL HISTORY

Petitioner, Aleksandr Ivanov, is a native of the former

4

USSR. He was admitted to the United States on or about June 24, 1997 as a refugee. He adjusted his status to that of a permanent resident on November 17, 1999. The Memorandum of Creation of Record of Lawful Permanent Residence, Form I-181, reveals that he is stateless. See attached copy of Petitioner's Affidavit labeled as Exhibit "A" and copy of Form I-181 labeled as Exhibit "B".

On April 18, 2001, after jury trial, Petitioner was convicted of Robbery in the First Degree in violation of New York State Penal Law §160.15[4], and sentenced to a term of imprisonment of six (6) years.

In view of Petitioner's conviction ICE initiated removal proceedings pursuant to Section 237(a)(2)(A)(i)&(iii) of INA. Petitioner was ordered removed from the U.S. to Russia on June 23, 2005. Petitioner filed an appeal of the order of removal to the Board of Immigration Appeals ("BIA"), but then, to facilitate his deportation without delay, he withdrew his appeal. And, the BIA issued an order on November 2, 2005.

On April 28, 2006 after he finished serving his sentence Petitioner was released from the state custody and taken into the custody of ICE at Buffalo Federal Detention Facility ("BFDF").

Petitioner fully cooperated with deportation officers in facilitating his travel documents. Exhibit "A" at paragraphs 12-

5

14, 16, 17, 22 and 23. See also attached copies of Application for Supervised Release labeled as Exhibit "C" (which also contains miscellaneous submissions marked 1 through 16), letter to Deportation Officer Castro labeled as Exhibit "D" and Case Management Worksheet labeled as Exhibit "E".

Petitioner's File Custody Review under 8 C.F.R. 241.4 was scheduled on or after July 28, 2006 upon the expiration of the initial 90-day removal period. Petitioner was served with a written Decision to Continue Detention on September 11, 2006. See attached Notice for File Custody Review and Decision to Continue Detention labeled as Exhibits "F" and "G" respectively.

Petitioner has never been served with a notice transferring authority over his custody status to ICE HQPDU.

Petitioner filed an inquiry to HQPDU in regards to that matter dated November 14, 2006, but he has not received any response. Then, on or about November 30, 2006, Petitioner filed a request to HQPDU to conduct a custody review as mandated in 8 C.F.R. §241.13(d)(1). See attached copies of the said requests labeled as Exhibits "H" and "I" (Certified Mail Return Receipt enclosed). See also Exhibit A, at paragraphs 21 and 24.

On December 29, 2006 HQPDU issued a written Decision to Continue Detention. A copy is attached hereto as Exhibit "J".

In his affidavit Petitioner asserts that he was born in the former USSR but he has never become a citizen of Russia.

6

The fact that Petitioner had been issued a travel passport for "exit for permanent residence" at the age of 15 precluded him from applying for an internal Russian passport when he turned 16 years old. Exhibit A, at paragraphs 6-9.

Accordingly, at present, Petitioner does not have any documents that would identify himself as a Russian citizen. There was no record created in Russia that an internal passport has ever been issued for Ivanov, nor there was a record that Ivanov's internal passport has been turned in when he was issued a travel passport. For that reason Russian Consulate in New York City ("Consulate") failed to confirm Petitioner's citizenship and, therefore, refused to issue travel documents. Consulate has not issued a statement that Petitioner could apply for citizenship at this time.

To the contrary, two Deportation Officers at BFDF repeatedly advised Petitioner and his attorney that Consulate could not verify Petitioner's citizenship. Exhibit A, at paragraphs 16, 20. While, Petitioner made many attempts, he has not been able to speak with any representative of the Consulate in order to validate the said statement. Furthermore, D.O. Castro as well as HQPDU ignored Petitioner's requests to disclose correspondence received from the Consulate. Exhibit A, at paragraphs 16, 21, 23 and Exhibit H.

In the present day, Petitioner remains in ICE custody at

BFDF pending his removal. ICE has been unable to remove Petitioner to Russia or any other country.

**LEGAL FRAMEWORK FOR RELIEF SOUGHT**

In Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Supreme Court held that a period of six (6) months is a presumptively reasonable period of detention during which ICE may detain aliens in order to effectuate their removal. Id. at 701. The Court further ruled that "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Department of Homeland Security administrative regulations also recognize that the HQPDU has a six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonable foreseeable future. 8 C.F.R. § 241.13(b)(2)(ii).

According to 8U.S.C.§1231(a)(1)(B)(iii), Petitioner's post-removal period started on April 28, 2006 when he was taken into ICE custody. Therefore, the six-month presumptively reasonable removal period for Petitioner ended on October 28, 2006.

# ARGUMENT

## NO SIGNIFICANT LIKELIHOOD OF REMOVAL
## IN THE REASONABLY FORESEEABLE FUTURE

### No cooperation from the native country:

For all the foregoing, it is evident that Petitioner is stateless. And that, accompanied by the fact that there has been no cooperation from the Consulate, makes the possibility of Petitioner removal in the reasonably foreseeable future remote.

Department of State and various Immigration reports characterize Russia as one of the countries that often does not accept its nationals and refuses to issue travel documents.

> "One of the most serious problems with which the Immigration and Naturalization Service is faced is the disposition of aliens found deportable by the Service but who cannot be deported. The latest statistics show that there are 3,600 non-enforceable deportation orders, of which 1,365 involve Russians."

See Ali v. Ashcroft 213 F.R.D. 390, 404, 2003 WL 245587 (W.D.Wash.,2003) where the court interpreted the language of Section 1231(b) of the INA and concluded that:

> "In order to execute a warrant of deportation, a passport or travel document must be obtained from the representative of the foreign country to which the alien is to be deported. […] If deportation is not effected within a reasonable time, the alien must be released."

Although, D.O. Castro did not explicitly admit that there was no cooperation from the Consulate until July 18, 2006; the fact that on or about June 20, 2006 (on 52nd day since the beginning of his removal period) Petitioner was served with a

notice for upcoming custody review (Exhibit F), indicates that there was no positive response from the Consulate or no response at all. Exhibit A, at paragraphs 15-16.

Besides cases where there is no removal agreement between the detainee's country of origin and the United States, Federal Courts have found "no significant likelihood of removal" of a detainee in the reasonably foreseeable future in two major types of cases. One, where the detainee's country of origin specifically refuses to accept the detainee, see Rajigah v. Conway, 268 F.Supp.2d 159, 166 (E.D.N.Y.2003); see also Shefqet v. Ashcroft, No. 02-C7737, 2003 WL 1964290, *3 (N.D.Ill. Apr. 28, 2003); And two, where there is no definitive answer from the target country after several months as to whether it would issue travel papers for a detainee, see Lewis v I.N.S. 2002 WL 1150158, *4-5 (E.D.N.Y. May 7, 2002), Kacanic v. Elwood, No. 02-8019, 2002 WL 31520362, *10-11 (E.D.Pa. November 8, 2002), Habtegaber v. Jenifer, 256 F.Supp.2d 692, 697 (E.D.Mich.2003).

## 1.

The first type is relevant to Ivanov's case. In Shefqet v. Ashcroft, No. 02-C7737, 2003 WL 1964290, *3-4 Yugoslavian embassy informed INS, in a letter, that it would not issue a travel document to Petitioner for the reason that the Yugoslav authorities could not establish neither the identity nor the Yugoslav citizenship of Petitioner. Consequently, the court

10

concluded that ICE failed to effectuate Petitioner's removal within the presumptively reasonable period of time authorized by Zadvydas, and Petitioner's release was ordered. Here, Petitioner's situation is analogous to the one in Shefqet. Russian Consulate failed to verify Ivanov's citizenship and refused to issue travel documents. Petitioner has been detained pending removal for more than eight months, and ICE has been unable to carry out his removal.

In Rajigah v. Conway 268 F.Supp.2d at 166-167 (E.D.N.Y. 2003) Guyanese Ambassador advised ICE officials that his government would not issue a travel document for petitioner and ICE failed to remove petitioner within 6 months. The Court concluded that "petitioner has satisfied his burden of 'provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future' Zadvydas at 701" when petitioner submitted a letter from the Embassy stating that it would not issue travel documents to him.

## 2.

Unfortunately, due to circumstances beyond his control, Ivanov was not able to confirm the statement received from the Consulate. Exhibit A, at paragraph 16, 21, 23 and Exhibit H. In this event, the second type applies to Ivanov's case as well.

Lack of evidence that the Consulate of Barbados responded to INS requests for travel documents rendered sufficient proof

to meet the standard set in Zadvydas that travel documents were unlikely to be issued in the foreseeable future. See LEWIS V. I.N.S. 2002 WL 1150158 (E.D.N.Y., 2002). Accordingly:

> "The Court finds that these allegations are a sufficiently 'good showing' to shift the burden to the government to rebut this showing. The INS has already had over eight months […] to obtain travel documents and make other arrangements for Petitioner's deportation. Accordingly, the INS is hereby directed to show that Petitioner's removal in the foreseeable future is likely. If the INS cannot rebut Petitioner's showing of the unlikelihood of removal within 30 days of the filing of this Order, then Petitioner must be released."

In Kacanic v. Elwood No. 02-8019, 2002 WL 31520362, at *3 (E.D.Pa. Nov.8,2002) the court addressed this matter as follows:

> "Considering this lack of any definitive answer, or any indication that a definitive answer is likely soon, there is no legitimate reason to believe that removal will occur in the reasonably foreseeable future. See Mohamed v. Ashcroft, 2002 U.S. Dist. Lexis 16179, at *3 (W.D. Wash. April 15, 2002)(finding that the lack of a definite answer from the foreign consulate indicated that no removal was likely in the reasonably foreseeable future); Okwilagwe v. INS, 2002 U.S. Dist. Lexis 3596, at *9 (N.D. Texas March 2, 2002)(same)."

The Court further noted:

> "It simply does not follow from the fact that Yugoslavia has not said 'no' that they must be ready to say 'yes' within the foreseeable future. That there remains some possibility of removal does not satisfy the Government's burden. See Zadvydas, 533 U.S. at 701 (requiring a showing that there is no prospect of removal is not allowed under the statute)."

Apparently, there was no statement from Russian Consulate that a travel document for Ivanov would be issued in the future.

> "Respondent has not presented any evidence that cooperation from Ethiopia, Eritrea or any other country is expected in the near future or at all. Therefore, Respondent has failed to establish that additional negotiating time is likely to be fruitful."

12

Quoting from Habtegaber v. Jenifer, 256 F.Supp.2d at 697-698, where petitioner's native county ignored all requests for travel documents and the Service had not taken any additional steps to secure alien's removal. In which case, the court found that post-final-order detention of seven months violated Zadvydas when no cooperation from native country was expected in the future.

From all of the above, it is indisputable that Ivanov's removal is not likely in the reasonably foreseeable future whether Russian Consulate specifically refused to accept him or simply failed to respond to ICE' requests for travel documents.

**Efforts by ICE to effectuate Petitioner's removal:**

It has been established in Federal Courts that mere efforts by the ICE to contact Consulate are not recognized as evidence to prove that a travel document will be issued in the future. "We note initially that we lack evidence demonstrating the INS's continuing efforts to obtain the necessary document. See Kacanic, 2002 WL 31520362, at *5" Quoting from Shefqet v. Ashcroft, (some internal quotation marks omitted) Specifically, the Court in Kacanic pointed out:

> "The INS failed to make timely efforts to remove the Petitioner. This lack of effort only reinforces the conclusion that the Petitioner's removal is not likely to occur in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701 (rejecting merely good faith efforts of the INS as a guarantee that removal is likely); Sertse-Khama, 215 F.Supp.2d at *50 (considering the INS's lack of effort); Zhou, 2001 U.S. Dist. Lexis 18239 at *3(same)."

13

**Evidence of past removals:**

The fact that a number of Russian citizens were successfully removed in previous years is not persuasive. In this regard, federal courts have not been impressed by evidence of an arguable indication of past success in removing aliens to a particular country to establish a significant likelihood of removal of the alien in question in the reasonably foreseeable future. See Shefqet citing Kacanic, 2002 WL 31520362, at *4 (rejecting INS information about the number of aliens removed to Yugoslavia because it provided no information specific to the petitioner's case) and Seretse-Khama, 215 F.Supp.2d 37, 46, 49, 50 (D.D.C.2002)(same). See also Ablahad v. Ashcroft, 2002 U.S. Dist. Lexis 17405, at *3 (N.D.Ill. Sept. 6, 2002)(finding that evidence that aliens have in the past been deported to petitioner's country is not sufficient to carry the government's burden under Zadvydas), Mohamed, 2002 U.S. Dist. Lexis 16179 at *3 (same). See also Rajigah v. Conway 268 F.Supp.2d at 167, (E.D.N.Y., 2003.) where the Court noted:

> "Evidence of what the Guyanese government has done in the past with respect to petitioner and with respect to other nationals sheds little light on how the Guyanese government will respond to the current situation. Indeed, the fact that the Guyanese government regularly issues travel documents and issued travel documents to petitioner in the past merely indicates that its general protocol is to issue travel documents, and *that it must have a specific reason why it will not issue travel documents to petitioner at this time.*" (emphasis added).

Finally, there is no requirement that Petitioner's removal must be impossible. See Shefquet v. Ashcroft 2003 WL 1964290 (N.D.Ill.,2003.) where the court concluded:

> "Petitioner need not make a showing that removal is impossible. See Zadvydas, 533 U.S. at 702 (rejecting this requirement of the Fifth Circuit Zadvydas court). Although some possibility of removal may exist, Petitioner's period of post-final-order detention has been sufficiently long such that a remote, non-specific possibility does not satisfy Respondents' burden. See Mohamed v. Ashcroft, 2002 U.S. Dist. Lexis 16179, at *3 (W.D.Wash. Apr. 15, 2002) (adopting magistrate judge's finding that government did not meet Zadvydas burden because it provided no information regarding how or when it expected to obtain documents or cooperation from foreign government)."

From all the forgoing, it is unlikely that a travel document will be produced in order to accomplish Ivanov's removal in the reasonably foreseeable future.

## CLAIMS FOR RELIEF

### COUNT ONE
### STATUTORY VIOLATION

Petitioner re-alleges and incorporates by reference pages 2 through 15 above.

The detention, release and removal of aliens ordered removed from the United States is governed by the provisions of 8 U.S.C. § 1231. The statute provides that a criminal alien "may be detained beyond the removal period" if the Attorney General determines that the alien is a flight risk or a danger to the community. 8 U.S.C. §1231(a)(6).

In Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001), the Supreme Court addressed the issue of whether 8 U.S.C. § 1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the 90-day period. Reasoning that an alien's indefinite detention "would raise serious constitutional concerns," 533 U.S. at 682, 121 S.Ct. 2491, the Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Id. at 689, 121 S.Ct. 2491. The Court stated that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699, 121 S.Ct. 2491.

Thus, Petitioner's continued detention by Respondent is unlawful and contravenes 8 U.S.C. § 1231(a)(6). In the present case, the six-month presumptively reasonable period for removal efforts has expired on October 28, 2006. Petitioner still has not been removed, and he continues to languish in detention. Petitioner's removal to Russia or any other country is not significantly likely to occur in the reasonably foreseeable future. The Supreme Court held in Zadvydas that ICE's continued detention of someone like Petitioner under such circumstances is unlawful.

## COUNT TWO
## CONSTITUTIONAL VIOLATION

### SUBSTANTIVE DUE PROCESS VIOLATION

Petitioner re-alleges and incorporates by reference pages 2 through 16 above.

The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. In Zadvydas v. Davis the Supreme Court held that, the Due Process Clause applies to all persons within the territory of the United States, including aliens. Particularly, the Due Process Clause protects aliens previously admitted into the country who are subject to a final order of deportation, such as Petitioner. (Cites, quotes, and internal markings omitted).

Petitioner's continued detention violates Petitioner's right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint.

The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. While respondents would have an interest in detaining Petitioner in order to effectuate removal, that interest does not justify the indefinite detention of Petitioner, who is not significantly likely to be removed in the reasonably foreseeable future. Zadvydas recognized that ICE might continue to detain aliens only for six months, which is a

17

presumptively reasonable period necessary to secure the alien's removal. Petitioner has already been detained in excess of six-months and his removal is not significantly likely to occur in the reasonably foreseeable future. Therefore, Petitioner's continued detention violates his constitutional rights to substantive due process.

## PROCEDURAL DUE PROCESS VIOLATION

Petitioner re-alleges and incorporates by reference pages 2 through 17 above.

Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning alien's custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Petitioner violates Petitioner's right to procedural due process.

### 1.

Petitioner was denied his procedural due process rights when ICE withheld information relating to Petitioner's detention. ICE ignored Petitioner's requests and failed to disclose correspondence received from the Russian Consulate. Exhibit A, at paragraphs 16 and 21, and Exhibit H.

**2.**

The administrative review of Petitioner's post-order detention is inadequate due to agency bias. See St. John v. McElroy, 917 F.Supp. 243, 251 (S.D.N.Y.1996). Petitioner's Decision to Continue Detention is "hardly a model of due process". See Kacanic v. Elwood 2002 WL 31520362, at (FN11) (E.D.Pa.2002). It took 6 weeks before Petitioner was served with a written decision that did not even reflect a date decision was made. See Exhibit A at paragraph 19 and Exhibit G.

Furthermore, the statement that Petitioner is a Russian citizen and that he is a threat to community was based on findings unsupported by any evidence. First, there are neither documents nor any records that Ivanov is a citizen of Russia. Second, ICE has not initiated any of the procedures required to certify Petitioner as "specially dangerous" or falling into any of four categories described in 8 C.F.R. §241.14 that authorize indefinite detention. ICE has not obtained a certification of special dangerousness from the Commissioner. It has not ordered that Petitioner undergoes a medical examination, and it has not initiated a reasonable cause proceeding in Immigration Court. In short, ICE has not followed its own rules, or the due process demanded by the U.S. Constitution and by Zadvydas. Though, procedural protections are available to Petitioner, they, apparently, permit continued and perhaps indefinite detention.

19

ICE' assertions that Petitioner can be indefinitely detained due to his criminal record should carry no weight whatsoever in this Court's determination. In his Application for Supervised Release (Exhibit C) with miscellaneous documents attached thereto (marked 1 through 16) Petitioner clearly demonstrated that he would not be a threat to anyone nor a risk of flight. Exhibit C with its attachments 1 through 16 present evidence of Petitioner's education, employment history, his efforts towards rehabilitation, family ties, disciplinary history while incarcerated, and offer of accommodations. The record shows the following undisputed facts: Petitioner has strong family and community ties and support, an offer of employment and the necessary education. Petitioner is very remorseful for his actions in the past. He accepted responsibility for it and paid his debt to society. Petitioner is essentially stateless - he has no passport, citizenship, or travel papers and has no place to go other than back to his family and community in Brooklyn, New York.

### 3.

On December 6, 2006 HQPDU received Petitioner's request for custody review under 8 C.F.R. §241.13(d)(1). Ironically, as of December 8, 2006 (40 days after the expiration of the six-month presumptively reasonable removal period) Petitioner's file had not been transferred from BFDF to HQPDU. However, instead of

following the procedure set in 8 C.F.R. §241.13(e) HQPDU issued a quick Decision to Continue Detention dated December 29, 2006. See Exhibit A, at paragraphs 24-26, Exhibits I and J.

Apparently, Petitioner's second custody review was hardly a model of due process as well as the first one. In his request dated November 30, 2006 Petitioner presented sufficient evidence that his removal is not likely to occur in the reasonably foreseeable future. First, Petitioner was a native of the former USSR but he never became a citizen of Russia, and second, the Consulate failed to confirm Petitioner's citizenship and refused to issue travel documents. Petitioner also provided information of his cooperation with removal efforts.

It is obvious that HQPDU did not follow its own regulations. It did not only fail to present any evidence to rebut Petitioner's assertion that his removal is not likely, but also denied Petitioner an opportunity to respond to such evidence. See 8 C.F.R. §241.13(e)(1)&(4).

Instead, HQPDU rendered a determination that consisted of a general statement but absolutely no evidential support of how or when ICE "expects" to remove Petitioner.

At the same time, the HQPDU decision informs Petitioner that he is not precluded "from bringing forth evidence in the future to demonstrate a good reason why [his] removal is unlikely." However, according to Federal Courts' decisions (see

21

pages 9-15 of this memorandum of law), the fact that Petitioner has been cooperating with ICE from the beginning but ICE has been unable to obtain a travel document for him during six months *provides* a "good reason" that his removal is "unlikely".

From all of the above it is evident that Petitioner was denied his procedural due process rights guarantied by the U.S. Constitution. There is no administrative mechanism in place for Petitioner to demand a fair decision or appeal a custody decision that violates Zadvydas.

**CONCLUSION**

In sum, Petitioner is a lawful permanent resident of the United States. He is not a threat to anyone or a risk of flight. He has strong ties to the community in which he resides. He is subject to an unreasonable period of detention pending his removal, which is not likely to occur in the reasonably foreseeable future. ICE failed to obtain travel documents for Petitioner within reasonable period of time and is not taking any further steps to execute the order of deportation. Under these circumstances, there is simply no good reason to deny Petitioner his freedom protected by the Constitution and the laws of the United States. Ivanov is entitled to release under supervision. Accordingly, habeas corpus relief should be granted, or in the alternative, an evidentiary hearing conducted to explore the pertinent issues in greater detail.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release Petitioner from custody;

3) Enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention of Petitioner;

4) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

5) Grant any other and further relief that this Court deems just and proper.

Dated: January 3, 2007

ALEKSANDR IVANOV, A71 383 827
Petitioner, *pro se*
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, N.Y. 14020

23